**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHINATOWN SERVICE CENTER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-00331-JEB |
| ) | |
| U.S. DEPARTMENT OF HEALTH ) | |
| AND HUMAN SERVICES, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' MOTION FOR VOLUNTARY REMAND, OR, IN THE
ALTERNATIVE, A STAY OF PROCEEDINGS**

Defendants the United States Department of Health and Human Services and Xavier Becerra, in his official capacity as Secretary of Health and Human Services, by and through undersigned counsel, hereby move the Court for a voluntary remand of the provisions of the Final Rule: Nondiscrimination in Health and Health Education Programs or Activities, 85 Fed. Reg. 37,160 (June 19, 2020) that are at issue in the above-captioned matter. In the alternative, Defendants move to stay all proceedings in this case until the conclusion of the agency's rulemaking proceeding reconsidering the aforementioned rule. The grounds supporting this motion are set forth in the accompanying memorandum. In accordance with the Local Civil Rules, a proposed order is attached.

Dated: August 18, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MICHELLE R. BENNETT
Assistant Director, Federal Programs Branch

*/s/ Liam C. Holland*
LIAM C. HOLLAND
(*Admitted in New York*)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, D.C. 20044
(202) 514-4964
Liam.C.Holland@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHINATOWN SERVICE CENTER, *et al.*,    )
                                       )
            Plaintiffs,                )
                                       )
        v.                             )        Case No. 1:21-cv-00331-JEB
                                       )
U.S. DEPARTMENT OF HEALTH              )
AND HUMAN SERVICES, *et al.*,          )
                                       )
            Defendants.                )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR VOLUNTARY REMAND, OR, IN THE ALTERNATIVE, A STAY OF
PROCEEDINGS**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

BACKGROUND................................................................................................................... 2

ARGUMENT ....................................................................................................................... 8

I.   The Court Should Remand the 2020 Rule Without Vacatur Because HHS is
     Reconsidering the Challenged Rule.........................................................................8

     A.   Motions for Voluntary Remand are Generally Granted..................................... 8

     B.   HHS's Substantial and Legitimate Concerns with the 2020 Rule Make
          Voluntary Remand Appropriate in this Case ....................................................10

     C.   Granting Remand Conserves Judicial Resources ..............................................11

     D.   Remand Would Not Unduly Prejudice Plaintiffs ..............................................13

II.  In the Alternative, the Court Should Stay Proceedings in This Case ..............................14

CONCLUSION....................................................................................................................17

## TABLE OF AUTHORITIES

**CASES**

*Abbott Lab'ys. v. Gardner*,
  387 U.S. 136 (1967)...............................................................................................11

*Am. Forest Res. Council v. Ashe*,
  946 F. Supp. 2d 1 (D.D.C. 2013),
  *aff'd,* 601 F. App'x 1 (D.C. Cir. 2015) ............................................................8, 12

*Am. Petroleum Inst.* v. EPA,
  683 F.3d 382 (D.C. Cir. 2012) ...........................................................................11

*\*Anchor Line Ltd. v. Fed. Mar. Comm'n*,
  299 F.2d 124 (D.C. Cir. 1962) ...............................................................1, 15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................12, 16, 17

*B.J. Alan Co. v. ICC*,
  897 F.2d 561 (D.C. Cir. 1990) ......................................................................11, 17

*Bayshore Cmty. Hosp. v. Azar*,
  325 F. Supp. 3d 18 (D.D.C. 2018) ........................................................................9

*Belize Soc. Dev. Ltd. v. Gov's of Belize*,
  668 F.3d 724 (D.C. Cir. 2012) ...........................................................................15

*Belmont Abbey Coll. v. Sebelius*,
  878 F. Supp. 2d 25 (D.D.C. 2012) .....................................................................11

*Cal. Cmtys. Against Toxics v. EPA*,
  688 F.3d 989 (9th Cir. 2012) ................................................................................9

*\*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*,
  375 F.3d 412 (6th Cir. 2004) ...............................................................................9

*City of Arlington v. FCC*,
  569 U.S. 290 (2013)...............................................................................................9

*Code v. McHugh*,
  139 F. Supp. 3d 465 (D.D.C. 2015) ...................................................................10

*Colwell v. HHS*,
  558 F.3d 1112 (9th Cir. 2009) ..............................................................................4

*Edward W. Sparrow Hosp. Ass'n v. Sebelius*,
   796 F. Supp. 2d 104 (D.D.C. 2011) ........................................................... 9

*Ethyl Corp. v. Browner*,
   989 F.2d 522 (D.C. Cir. 1993) ................................................................ 15

*FBME Bank Ltd. v. Lew*,
   142 F. Supp. 3d 70 (D.D.C. 2015) ................................................. 9, 12, 13

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ....................................................................... 8, 11, 13

*Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*,
   920 F.2d 960 (D.C. Cir. 1990) ................................................................ 14

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ............................................................................... 15

*Lau v. Nichols*,
   414 U.S. 563 (1974) ............................................................................. 2, 3

*Limnia, Inc. v. U.S. Dep't of Energy*,
   857 F.3d 379 (D.C. Cir. 2017) ................................................................. 9

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
   397 F. Supp. 3d 34 (D.D.C. 2019) ................................................ 13, 15, 16

*Mitchell Coal & Coke Co. v. Pa. R.R.*,
   230 U.S. 247 (1913) ............................................................................... 17

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................... 5, 8

*Nat'l Ass'n of Home Builders v. EPA*,
   682 F.3d 1032 (D.C. Cir. 2012) ........................................................ 5, 9, 11

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005) ................................................................................. 9

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
   366 F.3d 930 (D.C. Cir. 2004) ............................................................... 12

*Occidental Chemical Corp. v. FERC*,
   869 F.2d 127 (2d Cir. 1989) .............................................................. 11, 16

*Pennsylvania v. ICC*,
   590 F.2d 1187 (D.C. Cir. 1978) ............................................................. 11

*Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA*,
    740 F.2d 21 (D.C. Cir. 1984) ...................................................................... 11

*Reiter v. Cooper*,
    507 U.S. 258 (1993) ................................................................................... 17

*Reno v. Catholic Soc. Servs., Inc.*,
    509 U.S. 43 (1993) ..................................................................................... 12

*Sierra Club v. Van Antwerp*,
    560 F. Supp. 2d 21 (D.D.C. 2008) .............................................................. 10

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976) ..................................................................................... 12

*\*SKF USA Inc. v. United States*,
    254 F.3d 1022 (Fed. Cir. 2001) .................................................... 9, 10, 14-15

*Smith v. Pollin*,
    194 F.2d 349 (D.C. Cir. 1952) .................................................................... 16

*Sutherland v. Ernst & Young LLP*,
    856 F. Supp. 2d 638 (S.D.N.Y. 2012) ......................................................... 15

*United States v. Morgan*,
    313 U.S. 409 (1941) ................................................................................... 16

*\*Util. Solid Waste Activities Grp. v. EPA*,
    901 F.3d 414 (D.C. Cir. 2018) ......................................................... 9, 11, 13

*Virginia Petroleum Jobbers Ass'n v. FPC*,
    259 F.2d 921 (D.C. Cir. 1958) .................................................................... 13

*\*Whitman-Walker Clinic, Inc. v. HHS*,
    485 F. Supp. 3d 1 (D.D.C. 2020),
    *appeal filed,* Case No. 20-5331 (D.C. Cir. Nov. 9, 2020) ................... 2, 13, 16-17

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
    165 F.3d 43 (D.C. Cir. 1999) ...................................................................... 11

## STATUTES

5 U.S.C. § 706 ................................................................................................ 8

42 U.S.C. § 2000d ........................................................................................... 2

42 U.S.C. § 2000d-1 ....................................................................................... 2

42 U.S.C. § 18116 ........................................................................................... 3

**FEDERAL RULES**

Fed. R. Civ. P. 25 ......................................................................................... 1

**REGULATIONS**

45 C.F.R. § 92.4 ........................................................................................... 4

45 C.F.R. § 92.8 ........................................................................................4, 5

45 C.F.R. § 92.101 ..............................................................................*passim*

45 C.F.R. § 92.201 ....................................................................................... 3

Exec. Order No. 13166,
    65 Fed. Reg. 50,121 (Aug. 11, 2000) ....................................................... 5

Executive Order 13985: Advancing Racial Equity and Support for Underserved
    Communities Through the Federal Government,
    86 Fed. Reg. 7,009 (Jan. 25, 2021) ......................................................... 5

Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against
    National Origin Discrimination Affecting Limited English Proficient Persons,
    67 Fed. Reg. 41,455 (June 18, 2002) ..................................................... 4-5

Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against
    National Origin Discrimination Affecting Limited English Proficient Persons,
    68 Fed. Reg. 47,311 (Aug. 8, 2003) ....................................................... 4

Nondiscrimination in Health and Health Education Programs or Activities,
    85 Fed. Reg. 37,160 (June 19, 2020) ................................................1, 4, 5

Nondiscrimination in Health Programs and Activities,
    81 Fed. Reg. 31,375 (May 18, 2016) ...................................................3, 4

## INTRODUCTION

Consistent with the D.C. Circuit's longstanding directive "that when an agency seeks to reconsider its action, it should move the court to remand or hold the case in abeyance pending reconsideration by the agency[,]" *Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962), Defendants United States Department of Human and Human Services ("HHS") and Xavier Becerra, in his official capacity as Secretary of HHS,[1] move the Court to remand the challenged provisions of the Final Rule: Nondiscrimination in Health and Health Education Programs or Activities, 85 Fed. Reg. 37,160 (June 19, 2020) (the "2020 Rule"), to HHS and to dismiss this action without prejudice. In the alternative, Defendants move the Court for a stay of proceedings.

In this case, Plaintiffs challenge aspects of the 2020 Rule that modified HHS regulations governing meaningful access to programs or activities covered by Section 1557 of the Affordable Care Act by limited English proficient ("LEP") individuals. HHS has completed an initial review of the 2020 Rule and has decided to commence a rulemaking proceeding to revise or replace the rule. In light of this ongoing agency reconsideration, the Court should remand the rule to the agency without vacatur. A remand would avoid potentially unnecessary litigation in this Court over aspects of the 2020 Rule that would be reconsidered in the rulemaking proceeding on remand; it would conserve the parties' limited resources, allowing HHS to focus its efforts on the new rulemaking instead of this litigation; and it would best serve the interests of judicial economy. Through HHS's administrative rulemaking process, HHS will address the issues Plaintiffs raise in their Complaint. Indeed, all members of the public, including Plaintiffs Chinatown Service Center and Saint Barnabas Senior Services, will have the opportunity to submit comments on the proposed rule. HHS's new final rule therefore may resolve or moot some or all of the claims presented in this litigation. And, if the new rule does not resolve Plaintiffs' concerns, Plaintiffs can challenge the new rule at that time. In any such challenge, the parties and court would benefit from reviewing

---

[1] Xavier Becerra has been substituted for Norris Cochran as a Defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

the agency's new rule and accompanying new administrative record, rather than continuing to litigate a rule that the agency is in the process of reconsidering.

Moreover, Plaintiffs will not be unduly prejudiced by a remand. HHS intends to consider and evaluate issues raised in the various legal challenges to the 2020 Rule during the rulemaking process, including arguments made by Plaintiffs in this case. And there is little reason to believe that parallel proceedings in this Court might benefit Plaintiffs, as this Court previously determined that other plaintiffs raising similar claims were not likely to prevail on the merits of their challenge to the LEP provisions of the 2020 Rule. *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 49-54 (D.D.C. 2020), *appeal filed,* Case No. 20-5331 (D.C. Cir. Nov. 9, 2020). Finally, in addition to HHS's ongoing rulemaking, Plaintiffs have other avenues to address their alleged harms, which are focused on the actions of Los Angeles County and several other entities that Plaintiffs do not identify in the Complaint. For example, Plaintiffs may sue Los Angeles County over the discrimination they allege or file a complaint against Los Angeles County with HHS's Office for Civil Rights ("OCR").

## BACKGROUND

**Pre-Affordable Care Act ("ACA") Statutory and Regulatory Background**. Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Section 602 authorizes and directs Federal agencies that are empowered to extend Federal financial assistance to any program or activity "to effectuate the provisions of [§ 601] . . . by issuing rules, regulations, or orders of general applicability[.]" 42 U.S.C. § 2000d-1.

In *Lau v. Nichols*, 414 U.S. 563 (1974), the Supreme Court interpreted Title VI regulations promulgated by the former Department of Health, Education, and Welfare, to prohibit conduct that has a disproportionate effect on LEP persons because such conduct constitutes national origin discrimination. In *Lau*, a San Francisco school district that had a significant number of non-

2

English speaking students of Chinese origin was required to take reasonable steps to provide them with a meaningful opportunity to participate in federally funded educational programs. *Id.* at 568.

**Section 1557 of the ACA**. In 2010, Congress enacted the ACA. In Section 1557, the ACA applies anti-discrimination principles to health programs or activities by referencing four federal anti-discrimination laws, including Title VI. Specifically, Section 1557 directs that

> [e]xcept as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section [504 of the Rehabilitation Act of 1973 (29 U.S.C. 794)], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under [Title I of the ACA] (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section [504], or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a). Congress authorized HHS to "promulgate regulations to implement" Section 1557. *Id.* § 18116(c).

**HHS's 2016 Rule**. HHS first issued a rule implementing Section 1557 in May 2016. ("the 2016 Rule"). *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375 (May 18, 2016). As relevant here, and consistent with Title VI, the 2016 Rule addressed meaningful access for LEP individuals. *See id.* at 31,470 (adding 45 C.F.R. § 92.201). The 2016 Rule generally required that "[a] covered entity shall take reasonable steps to provide meaningful access to each individual with [LEP] eligible to be served or likely to be encountered in its health programs and activities." *Id.* (§ 92.201(a)). The 2016 Rule also included provisions governing evaluation of compliance, *id.* (§ 92.201(b)); addressing language assistance services, *id.* (§ 92.201(c)); addressing specific requirements for interpreter and translation services, *id.* (§ 92.201(d)); restricting the use of certain persons to interpret or facilitate communication, *id.* (§ 92.201(e)); and governing video remote interpreting services, *id.* (§ 92.201(f)).

The 2016 Rule also included a notice requirement, requiring covered entities to provide individuals with notice of their Section 1557 antidiscrimination rights. *Id*. at 31,469 (adding § 92.8). Among other requirements, a covered entity was explicitly required to provide notice that it "provides language assistance services, including translated documents and oral interpretation, free of charge and in a timely manner, when such services are necessary to provide meaningful access to individuals with limited English proficiency." *Id*. (§ 92.8(3)).

The 2016 Rule also explicitly addressed specific tagline requirements. Taglines are "short statements written in non-English languages that indicate the availability of language assistance services free of charge." *Id*. at 31,468 (adding § 92.4). Covered entities were explicitly required to "post taglines in at least the top 15 languages spoken by individuals with [LEP] of the relevant State or States" for significant publications and significant communications that are not small-sized. *Id*. at 31,469 (§ 92.8(d)(1), 92.8(f)(1)). For small-sized significant publications and significant communications, covered entities were required to "post taglines in at least the top two languages spoken by individuals with [LEP] of the relevant State or States." *Id*. (§ 92.8(d)(2), 92.8(g)(2)).

**HHS's 2020 Rule**. In June 2020, HHS issued a new rule that revised the 2016 Rule in certain respects. 85 Fed. Reg. 37,160 ("the 2020 Rule"). As relevant here, the 2020 Rule requires that each covered entity "shall take reasonable steps to ensure meaningful access to [health] programs or activities by [LEP] individuals." *Id*. at 37,245 (adding 45 C.F.R. § 92.101(a)). The 2020 Rule codifies the four-factor balancing test for determining compliance with Title VI from longstanding DOJ and HHS guidance. *Id*. (§ 92.101(b)); *see* Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 68 Fed. Reg. 47,311, 47,314-16 (Aug. 8, 2003) (HHS);[2] Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed.

---

[2] Additional background on HHS's 2003 LEP Guidance is set forth in *Colwell v. HHS*, 558 F.3d 1112, 1116-19 (9th Cir. 2009).

Reg. 41,455, 41,459-61 (June 18, 2002) (DOJ); *see also* Exec. Order No. 13166, 65 Fed. Reg. 50,121 (Aug. 11, 2000).   Under the 2020 Rule, the precise contours of each covered entity's required practices to ensure meaningful access to health programs or activities by LEP persons necessitates an individualized assessment of those four factors. 45 C.F.R. § 92.101(b).

With respect to notices and taglines, the 2020 Rule repealed former 45 C.F.R. § 92.8(d)'s explicit requirements addressing taglines for all significant communications.   85 Fed. Reg. at 37,162.  The 2020 Rule continues to require that covered entities provide "taglines whenever such taglines are necessary to ensure meaningful access by LEP individuals to a covered program or activity."  *Id*. at 37,176.  The 2020 Rule also "maintains [the] requirement" in "[t]he regulations of the underlying statutes referred to in Section 1557 (Title VI, Section 504, Title IX, and the Age Act) [that] have long mandated that covered entities provide a notice of nondiscrimination."  *Id*. at 37,175-76.

**The Biden Administration's Section 1557 Policy Reassessment**.  On January 20, 2021, Joseph R. Biden, Jr. took office as President of the United States.  That same day, the President issued Executive Order 13985: Advancing Racial Equity and Support for Underserved Communities Through the Federal Government.  86 Fed. Reg. 7,009, 7,009 (Jan. 25, 2021) ("EO 13985").  In section 1, EO 13985 explained that it is "the policy of [the Biden] Administration that the Federal Government should pursue a comprehensive approach to advancing equity for all, including people of color and others who have been historically underserved, marginalized, and adversely affected by persistent poverty and inequality."  *Id*. Section 1 further provided that "each agency must assess whether, and to what extent, its programs and policies perpetuate systemic barriers to opportunities and benefits for people of color and other underserved groups."  *Id*.

On and after January 20, 2021, new leadership also began arriving at HHS.  Recognizing that "[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations," *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1043 (D.C. Cir. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 59 (1983)

(Rehnquist, J., concurring in part and dissenting in part)), new HHS leadership began to reconsider the challenged rule on its own initiative.  As explained in the attached declaration, HHS has now decided to initiate new rulemaking to revise its regulations implementing Section 1557—a decision that is reflected in the Spring Unified Agenda of Federal Regulatory and Deregulatory Actions—and anticipates issuing a Notice of Proposed Rulemaking ("NPRM") no later than April 2022.  Declaration of Robinsue Frohboese ("Frohboese Decl.") ¶¶ 7-10 (attached as Exhibit 1).

**This Litigation and Plaintiffs' Allegations**.  On February 5, 2021, Plaintiffs—Chinatown Service Center ("CSC") and Saint Barnabas Senior Services ("SBSS")—two "community-based organizations that serve older adults with [LEP] who rely entirely on language assistance services to access and understand healthcare services"—filed this action asserting various challenges under the Administrative Procedure Act ("APA") to the 2020 Rule's modifications to the LEP provisions of HHS's Section 1557 regulations.  *See* Compl. for Declaratory and Inj. Relief ("Compl.") ¶¶ 1, 94-130, ECF No. 1.

Plaintiffs—which are both located in Los Angeles, California—allege that Los Angeles County and several other unnamed third parties covered by Section 1557 have taken insufficient steps to provide meaningful access to their programs or activities for LEP individuals.  *See id.* ¶¶ 19-20, 71-72, 76-83.  CSC, which provides "social services to LEP individuals, like assisting them with understanding documents, including healthcare notices[] they receive in the mail[,]" alleges that it has seen increased "demand for additional language assistance" since the issuance of the 2020 Rule and during the ongoing COVID-19 pandemic.  *Id.* ¶ 19.  Specifically, "[i]n the last four months of 2020, CSC's social services encounters more than doubled compared to 2019, averaging about 5,328 encounters per month compared to only 2,290 from 2019 for the same period."  *Id.* ¶ 72.  "The same is true for CSC's 'read letter' services, which climbed to almost 2,000 in the last four months of 2020 compared to only 1,337 [in] the same period in 2019."  *Id.* Plaintiffs do not allege that CSC has filed a complaint with HHS's Office for Civil Rights regarding any covered entities whose changed practices have allegedly affected CSC's social service

encounters.  Defendants have searched OCR records and confirmed that CSC has never filed a complaint with OCR.

SBSS "serves older adults, including over 70% who are LEP." *Id*. ¶ 20.  SBSS alleges that after the 2020 Rule went into effect and during the ongoing COVID-19 pandemic, it has had "to rearrange its usual services in light of the surge of LEP older adults seeking language assistance services with the COVID-19 vaccination process." *Id*.  "SBSS's case managers routinely assist its clients in navigating the healthcare system, and beginning in January 2021, as Los Angeles County began to allow individuals 65 years and older to get the COVID-19 vaccine, SBSS began receiving many vaccine-related inquiries."  *Id*. ¶ 79.  SBSS clients report "difficulty understanding vaccine-related information because some of the materials, like post-care instructions, are not available in their language, nor do they come with in-language taglines.  Furthermore, the county health department does not advise them of their rights to free language assistance services in the vaccine process."  *Id*. ¶ 80.  SBSS also alleges that "[t]he Los Angeles County COVID-19 vaccine telephonic hotline and webpage are available in English and Spanish.  The webpage also features a small, inconspicuous globe icon on the top left-hand corner next to the word 'Translate' that embeds an automated Google translation in various languages."  *Id*. ¶ 81.  SBSS claims that Los Angeles's "lack of in-language translation options has required SBSS's staff to spend more time helping LEP older adults access vaccine appointments."  *Id*. ¶ 82.  And "[n]othing in the registration process notifies the individual about their right to a free, qualified interpreter."  *Id*. ¶ 83.  "Therefore, LEP older adults ask SBSS staff to accompany them to help them interpret during the vaccination process."  *Id*.  SBSS does not allege that it has filed a complaint with HHS's Office for Civil Rights regarding its allegations the Los Angeles County health department has not taken reasonable steps to ensure meaningful access for LEP individuals.  Defendants have searched OCR records and confirmed that SBSS has never filed a complaint with OCR.

Plaintiffs' Complaint does not seek relief under Section 1557 or the 2020 Rule against the covered entities that are allegedly harming them.  *See generally* Compl.  Instead, it asserts seven counts against HHS and the Secretary of HHS, each raising challenges under Section 706(2) of the

APA to provisions of the 2020 Rule addressing meaningful access for LEP individuals.   *See* Compl. ¶¶ 94-130; 5 U.S.C. § 706(2).   Count One asserts that the 2020 Rule's LEP provisions should be set aside under § 706(2)(A), (C) as not in accordance with law and in excess of statutory authority.   Compl. ¶¶ 94-99.   Counts Two through Seven allege that the provisions should be set aside as arbitrary and capricious under § 706(2)(A).   *Id.* ¶¶ 100-30.   Plaintiffs seek declaratory and injunctive relief as well as an order vacating and setting aside (presumably the challenged aspects of) the 2020 Rule.   Compl. Prayer for Relief.

## ARGUMENT

**I.    THE COURT SHOULD REMAND THE 2020 RULE WITHOUT VACATUR BECAUSE HHS IS RECONSIDERING THE CHALLENGED RULE**

Motions for voluntary remand are "commonly granted even when they are opposed." *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 44 (D.D.C. 2013), *aff'd,* 601 F. App'x 1 (D.C. Cir. 2015) (granting voluntary remand without vacatur).   Here, HHS moves for a voluntary remand (without vacatur) because it has substantial and legitimate concerns with the 2020 Rule and is reconsidering the rule.   Remand would allow HHS to consider the issues raised in Plaintiffs' Complaint in the context of its ongoing reconsideration of the rule, including Plaintiff's assertions about the harmful effects of the rule and alleged deficiencies in the agency's justification for the rule.   This motion should be granted in light of HHS's inherent authority to reconsider its own decisions, to ensure the integrity of the administrative process, and to conserve the Court's and the parties' resources.

### A.  Motions for Voluntary Remand are Generally Granted

Agencies have inherent authority to reconsider past decisions and to revise, replace, or repeal a decision to the extent permitted by law and supported by a reasoned explanation, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983), including the authority to correct or modify a prior rule by selecting a new policy in the range of those that lie "within the bounds of reasonable

interpretation," *see City of Arlington v. FCC*, 569 U.S. 290, 296 (2013). Further, an agency's regulations implementing a statute it administers are not "carved in stone" but must be evaluated "on a continuing basis," for example, "in response to . . . a change in administrations." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (citations omitted). "A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations. . . . [I]t is entitled to assess administrative records and evaluate priorities in light of the philosophy of the administration." *Na'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1043 (D.C. Cir. 2012) (citation omitted).

Voluntary remand is proper where an agency requests "a remand (without confessing error) in order to reconsider its previous position." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (quoting *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). In other words, remand should be granted "so long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Id.* (quoting *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017)); *see Edward W. Sparrow Hosp. Ass'n v. Sebelius*, 796 F. Supp. 2d 104, 107 (D.D.C. 2011) (noting that motions for voluntary remand are "usually granted"). This practice is rooted in judicial deference to an agency's inherent authority to reconsider its own decisions, judicial respect for the integrity of the administrative process, and an interest in conserving the resources of courts and parties. *See, e.g.*, *Citizens Against Pellissippi Parkway. Extension, Inc. v. Mineta*, 375 F.3d 412, 416–18 (6th Cir. 2004); *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73–74 (D.D.C. 2015).

"Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012); *see also Util. Solid Waste*, 901 F.3d at 436; *Limnia, Inc.*, 857 F.3d at 386–88 (refusing remand where agency had no intention to revisit challenged decision). In contrast, "if the agency's concern is substantial and legitimate, a remand is usually appropriate." *SKF USA*, 254 F.3d at 1029; *see also Bayshore Cmty. Hosp. v. Azar*, 325 F. Supp. 3d 18, 23 (D.D.C. 2018) (determining

that "[s]ubstantial and legitimate concerns warrant a remand"); *Code v. McHugh*, 139 F. Supp. 3d 465, 470 (D.D.C. 2015) (concluding that "Defendant's concern . . . is 'substantial and legitimate' and certainly not 'frivolous or in bad faith'" and issuing remand) (citation omitted); *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 25 (D.D.C. 2008) (concluding that an agency "has a substantial and legitimate interest in reconsidering its permit decision on remand based on a more complete factual record").

### B. HHS's Substantial and Legitimate Concerns with the 2020 Rule Make Voluntary Remand Appropriate in this Case

An agency may seek remand because it wishes to consider further the governing statute, the procedures it followed in reaching its decision, or the decision's relationship to other agency policies and interests, in light of its authority to reconsider the wisdom of its policies on a continuing basis. *SKF USA*, 254 F.3d at 1028-30. HHS seeks remand for those reasons. HHS is reconsidering the 2020 Rule based on substantial and legitimate reasons—its need to ensure that the 2020 Rule's provisions, including the LEP provisions, adequately advance the Administration's policies—and has determined that additional consideration should be given to certain aspects of the rule through notice and comment rulemaking. *See* Frohboese Decl. ¶¶ 7-10. For example, HHS has a substantial interest in ensuring that the provisions governing meaningful access to health programs and activities for LEP persons that Plaintiffs challenge do not unduly "perpetuate systemic barriers to opportunities and benefits for . . . underserved groups[,]" including LEP persons. *See id*. Voluntary remand is appropriate in light of these "substantial and legitimate concerns" with the 2020 Rule and HHS's intention to embark upon an imminent rulemaking process to revise or replace the rule. *SKF USA*, 254 F.3d at 1029 ("[I]f the agency's concern [with the challenged action] is substantial and legitimate, a remand is usually appropriate.").

Remand would give HHS the opportunity to fully explore and address these issues, as well as the concerns of Plaintiffs and other stakeholders, through the administrative rulemaking process. Remand would also allow HHS to develop a new administrative record, which would benefit the Court and the parties if the new rule were subsequently challenged. "[T]his kind of reevaluation

is well within an agency's discretion," *Nat'l Ass'n of Home Builders*, 682 F.3d at 1038 (citing *Fox Television*, 556 U.S. at 514-15), and the Court should allow it. *See Util. Solid Waste*, 901 F.3d at 436.

Moreover, permitting Plaintiffs' concerns to be addressed in the context of HHS's new rulemaking process also promotes important jurisprudential interests. "In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process." *Am. Petroleum Inst.* v. EPA, 683 F.3d 382, 386-87 (D.C. Cir. 2012) (quoting *Abbott Lab'ys. v. Gardner*, 387 U.S. 136, 148 (1967)); *see also Occidental Chemical Corp. v. FERC*, 869 F.2d 127, 129 (2d Cir. 1989) ("Were the Court to intervene at this stage," despite a pending rulemaking process, "we would deny the agency an opportunity to correct its own mistakes if any and to apply its expertise.") (quotation omitted); *Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25, 38-39 (D.D.C. 2012) (Boasberg, J.) (concluding rulemaking challenge not ripe for review where "the Court has before it a challenge to final regulations that Defendants have promised to amend"). Allowing the administrative process to run its course here will let HHS "crystalliz[e] its policy before that policy is subjected to judicial review," *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999) (citation omitted), and avoid "inefficient" and perhaps "unnecessary" "piecemeal review," *Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA*, 740 F.2d 21, 30 (D.C. Cir. 1984) (citation omitted).

### C.  Granting Remand Conserves Judicial Resources

Granting remand here promotes judicial economy and conserves the parties' and the Court's resources. Courts "have recognized that '[a]dministrative reconsideration is a more expeditious and efficient means of achieving adjustment of agency policy than is resort to the federal courts.'" *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting *Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978)). Allowing HHS to proceed with a new rulemaking allows it to address concerns with the 2020 Rule through the administrative

11

process. HHS might resolve the parties' concerns through that process, potentially rendering unnecessary future litigation that could strain the Court and the parties' resources.

In addition, continuing to litigate this case will consume HHS's and Plaintiffs' resources, and those resources could be better spent on the rulemaking process. Because many or all of the issues raised in Plaintiffs' Complaint will be re-evaluated in the new rulemaking, remand of the 2020 Rule will allow HHS to focus its resources on the new rulemaking, with input from Plaintiffs and other interested stakeholders. *See Frohboese Decl.* ¶¶ 7-10. In particular, ongoing litigation could interfere with HHS's rulemaking, as HHS would have to prioritize pending litigation deadlines. *See Am. Forest Res. Council*, 946 F. Supp. 2d at 43 ("[F]orcing [agency] to litigate the merits would needlessly waste not only the agency's resources but also time that could instead be spent correcting the rule's deficiencies."); Frohboese Decl. ¶ 11. Indeed, "[i]f a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed." *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).

HHS's anticipated rulemaking may fully address and resolve Plaintiffs' concerns or, at least, narrow the issues if Plaintiffs decide to challenge the new rule arising out of the rulemaking. Even if remand does not finally resolve all of Plaintiffs' claims (which it may), subsequent judicial review will turn on a new and different record that will necessarily alter the nature of this Court's review. Therefore, continuing to litigate the same issues that HHS may resolve though a new rulemaking "would be inefficient," *FBME Bank*, 142 F. Supp. 3d at 74, and a waste of judicial resources. That is especially so in light of the thorny jurisdictional and merits issues this Court would have to address if judicial review were to proceed on a parallel track. *See, e.g., Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945-46 (D.C. Cir. 2004); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 (1993); *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-46 (1976). "While deciding this case may eventually demand resolving [these] thorny dispute[s] . . . it is wiser to leave those intricate issues for another day" given the prospect that

Plaintiffs' concerns will be resolved on remand. *See Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 36 (D.D.C. 2019) (Boasberg, J.).

### D. Remand Would Not Unduly Prejudice Plaintiffs

Remand also would not unduly prejudice Plaintiffs. "In deciding a motion to remand, [courts] consider whether remand would unduly prejudice the non-moving party." *Util. Solid Waste Activities Grp.*, 901 F.3d at 436 (citing *FBME Bank Ltd.*, 142 F. Supp. 3d at 73). But HHS intends to consider and evaluate issues raised in the various legal challenges to the 2020 Rule during the rulemaking process, including arguments made by Plaintiffs in this case. *See* Frohboese Decl. ¶¶ 7-10.

Moreover, Plaintiffs will not be unduly prejudiced by a remand because this Court previously determined that similar claims are not likely to succeed on the merits. In *Whitman-Walker Clinic v. HHS*, 485 F. Supp. 3d 1 (D.D.C. 2020), the Court denied a preliminary injunction as to the LEP provisions of the 2020 Rule, noting that "to justify a change in policy, an agency must 'display awareness that it is changing position' and 'must show that there are good reasons for the new policy[,]'" and "HHS did both." *Id.* at 50 (quoting *Fox Television*, 556 U.S. at 515). "Without . . . a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration" advanced by a remand. *Cf. Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Furthermore, Plaintiffs cannot show undue prejudice because they have not sought to enforce the challenged Rule. That rule continues to require every covered entity "operating or administering a health program or activity subject to this part [to] take reasonable steps to ensure meaningful access to such programs or activities by [LEP] individuals." 45 C.F.R. § 92.101(a). Whether or not Plaintiffs' claims are remanded to HHS, nothing stops Plaintiffs from taking steps to seek enforcement of this provision against the entities that are alleged to be causing their hardship by filing a complaint.

Plaintiffs claim that their "ongoing harm will go unabated if this Court permits HHS to engage in . . . rulemaking[.]" Joint Status Report at 2, ECF No. 19 ("Joint Status Report"). But

Plaintiffs have other avenues to mitigate any harm they are suffering at the hands of covered entities while HHS reconsiders the rule. The 2020 Rule requires every covered entity "operating or administering a health program or activity subject to this part [to] take reasonable steps to ensure meaningful access to such programs or activities by [LEP] individuals." 45 C.F.R. § 92.101(a). Plaintiff SBSS asserts that Los Angeles County has not taken reasonable steps to ensure meaningful access for LEP individuals to its vaccine distribution program, *see* Compl. ¶ 81, but SBSS does not allege that it has contacted Los Angeles County to request that it update its website to provide more information about language access services. Nor has SBSS filed a complaint with HHS OCR to ask the agency to investigate whether Los Angeles County is failing to provide meaningful access to LEP individuals. *See* Joint Mot. to Stay Proceedings at 3, ECF No. 18. Nor has SBSS filed suit under Section 1557 or Title VI against Los Angeles County directly to challenge its alleged conduct. Plaintiff CSC has similarly failed to take any of these steps to mitigate its alleged harm.

Finally, proceeding on parallel tracks of judicial review and agency reconsideration could be disruptive to regulated parties. If Plaintiffs were to prevail and obtain vacatur of the LEP provisions of the 2020 Rule, the 2016 Rule would be revived only for so long as it takes the agency to issue its new rule (assuming it had not already done so before any litigation concluded). Requiring regulated parties to transition from the 2020 Rule, to the 2016 Rule, and then to the agency's new rule would likely be disruptive. And the Court should avoid "the disruptive consequences of an interim change that may itself be changed." *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990). For all these reasons, the Court should remand the rule to HHS without vacatur and dismiss this action without prejudice.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD STAY PROCEEDINGS IN THIS CASE

Even if this Court is reluctant to grant Defendants' motion for voluntary remand despite HHS's substantial and legitimate concerns with the 2020 Rule (which it should not be, *see SKF*

*USA*, 254 F.3d at 1029,) the Court should, in the alternative, stay proceedings in this case pending the completion of ongoing agency proceedings to reassess the rule. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "In deciding whether to grant a stay, courts generally 'weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties.'" *Masdar Solar & Wind Cooperatief U.A.*, 397 F. Supp. 3d at 39 (quoting *Belize Soc. Dev. Ltd. v. Gov's of Belize*, 668 F.3d 724, 732-33 (D.C. Cir. 2012)). In this case, for many of the same reasons justifying a remand, as explained *supra*, weighing all relevant factors confirms that a stay is warranted.

"[M]ov[ing] the court to . . . hold [a] case in abeyance pending reconsideration by the agency" of a challenged agency action is an established alternative "to remand." *See Ethyl Corp. v. Browner*, 989 F.2d 522, 524 n.3 (D.C. Cir. 1993) (quoting *Anchor Line Ltd.*, 299 F.2d at 125). Courts "commonly grant such motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be . . . incomplete." *Id.* at 524

*Benefits of a Stay.* As described above, requiring the parties to address this action immediately, without waiting for the Biden Administration to complete its reconsideration of the challenged rule, may needlessly consume the parties' and the Court's resources. Given the benefits to judicial economy of awaiting the completion of agency proceedings, a stay is appropriate here. *See Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012) ("[C]onsiderations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary.").

*Hardship to the Government of Denying the Stay.* Because the same agency counsel assigned to this litigation are also providing counsel to the decision-makers preparing for HHS's anticipated Section 1557 rulemaking proceeding, the government would face substantial hardship from denying the stay. Frohboese Decl. ¶ 11. As the Supreme Court has explained, "[i]f a

Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed." *Iqbal*, 556 U.S. at 685. Litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." *Id*. To be sure, litigation is sometimes "necessary to ensure that officials comply with the law," but can be especially "counterproductive" in cases like this one, when the relevant government officials are simultaneously reconsidering the wisdom of the very actions being challenged. *See id*. Defendants "will undeniably be burdened by having to" address the 2020 Rule "in two forums." *Masdar Solar & Wind Cooperatief U.A.*, 397 F. Supp. 3d at 40.

Moreover, staying proceedings when an agency is reconsidering the challenged action is prudent because "the integrity of the administrative process must be [as] equally respected" as the integrity of the judicial process. *United States v. Morgan*, 313 U.S. 409, 422 (1941). Indeed, agencies and reviewing courts "are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." *Id*.; *see Anchor Line Ltd.*, 299 F.2d at 125 n.2 (citing *Smith v. Pollin*, 194 F.2d 349, 350 (D.C. Cir. 1952) (comparing a stay of proceedings pending agency reconsideration of challenged decision to a stay of appellate proceedings while a district court considers a motion for a new trial while the appeal is still pending)). "[A] judicial decision at this time would merely impede the agency's efforts to complete its rulemaking proceedings[.]" *Occidental Chemical Corp.*, 869 F.2d at 129.

*Prejudice to Plaintiffs from a Delay*. For the same reasons Plaintiffs do not face undue prejudice from an order for voluntary remand, Plaintiffs do not face undue prejudice from a stay of proceedings pending the completion of HHS's rulemaking. *See supra* at 13-14. This litigation will divert Defendants' resources from preparing for an anticipated rulemaking proceeding that will address the very rule that Plaintiffs challenge. Although the new administration shares many of Plaintiffs' policy concerns, this Court previously determined that claims similar to Plaintiffs' are not likely to succeed on the merits. *See supra* at 13; *Whitman-Walker Clinic, Inc.*, 485 F. Supp.

3d at 49-54.  Accordingly, proceeding with this litigation may delay or threaten the quickest—and more likely—path to Plaintiffs' desired policy outcome.  *Iqbal*, 556 U.S. at 685; *B.J. Alan Co.*, 897 F.2d at 562 n.1.

A stay would also "give the [P]laintiff[s] a reasonable opportunity within which to apply to [HHS OCR] for a[n investigation] as to" whether the alleged "practice[s]" by covered entities like Los Angeles County with respect to LEP access constitute "reasonable steps to ensure meaningful access to [health] programs or activities by [LEP] individuals," 45 C.F.R. § 92.101(a).  *Cf. Reiter v. Cooper*, 507 U.S. 258, 268 n.3 (1993) (quoting *Mitchell Coal & Coke Co. v. Pa. R.R.*, 230 U.S. 247, 267 (1913)).

Alternatively, if the Court is disinclined to grant a motion to stay proceedings pending the completion of HHS's rulemaking at this time, the Court should, at minimum, stay proceedings pending HHS's anticipated issuance of a Notice of Proposed Rulemaking.  HHS anticipates issuing a Notice of Proposed Rulemaking no later than April 2022.  Frohboese Decl. ¶ 7.  By that time, Plaintiffs will have additional certainty about whether the proposed rule will address their concerns.  *See* Joint Status Report at 2.

For all of these reasons, Defendants respectfully request that this Court stay further proceedings pending completion of agency proceedings reassessing the challenged rule, or, at minimum, pending issuance of HHS's anticipated Notice of Proposed Rulemaking.

## CONCLUSION

HHS has identified concerns with the 2020 Rule, many of which are similar to those raised by Plaintiffs in their Complaint.  HHS intends to evaluate and address those concerns in its ongoing rulemaking proceedings.  *See* Frohboese Decl. ¶¶ 7-10.  Where, as here, HHS has committed to reconsidering the challenged action, the proper course is to remand the rule to HHS so it can address Plaintiffs' concerns through the administrative process.  HHS respectfully asks the Court to remand the 2020 Rule, without vacatur, and to dismiss this case without prejudice, rather than to have the parties litigate a rule that may be replaced.  In the alternative, the Court should stay the

case pending the conclusion of HHS's ongoing rulemaking proceedings.

Dated: August 18, 2021                 Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Acting Assistant Attorney General

                                        MICHELLE R. BENNETT
                                        Assistant Director, Federal Programs Branch

                                        /s/ Liam C. Holland
                                        LIAM C. HOLLAND
                                        (Admitted in New York)
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        P.O. Box No. 883, Ben Franklin Station
                                        Washington, D.C. 20044
                                        (202) 514-4964
                                        Liam.C.Holland@usdoj.gov

                                        Attorneys for Defendants