**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHINATOWN SERVICE CENTER, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 1:21-cv-00331-JEB |
| | ) |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al*., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
RESPONSE TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, OR, IN THE
ALTERNATIVE, A STAY OF PROCEEDINGS**

## Table of Contents

Page

I.   INTRODUCTION ..................................................................................................1

II.  BACKGROUND ..................................................................................................1

    A.   Section 1557 of the ACA ..........................................................................1

        1.   The 2016 Rule ................................................................................2

        2.   The 2020 Rule ................................................................................3

    B.   Procedural History ....................................................................................4

III. ARGUMENT .......................................................................................................6

    A.   Voluntary Remand is Appropriate Only if the 2020 Rule Is Vacated ..........6

        1.   The 2020 Rule Suffers from Serious Deficiencies that Require Remand with Vacatur................................................................................7

        2.   HHS's Disruption Arguments Against Vacatur Lack Merit.................9

    B.   Defendants' Argument that Plaintiffs will not be Prejudiced by a Remand without Vacatur also Lacks Merit.................................................................11

        1.   Defendants' Argument is Irrational Given their Admission of "Substantial and Legitimate Concerns with the 2020 Rule"...................................11

        2.   Plaintiffs' Complaint is Distinct from that of the Plaintiffs in *Whitman-Walker* ........................................................................................12

        3.   Plaintiffs and the LEP Older Adults They Serve Continue to Experience Harm from the 2020 Rule. ..............................................................14

        4.   Complaints Against Individual Covered Entities will not Remedy the Harm to Plaintiffs and the LEP Older Adults They Serve.................16

    C.   In the Alternative, the Court Should Grant a "Stayed Vacatur" or Other Time-Limited Stay with Reporting Requirements. ..............................................18

IV.  CONCLUSION...................................................................................................20

CORE/3521722.0002/169511687.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ...............................................................7

*Am. Petroleum Inst. v. E.P.A.*,
  683 F.3d 382 (D.C. Cir. 2012)...............................................................20

*California ex rel. Becerra v. Azar*,
  950 F.3d 1067 (9th Cir. 2020) (*en banc*) ...............................................8

*Belmont Abbey College v. Sebelius*,
  878 F.Supp.2d 25 (D.D.C. 2012)...........................................................19

*Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*,
  972 F.3d 117 (D.C. Cir. 2020) ................................................................6

*Burlington Truck Lines, Inc. v. U.S.*,
  371 U. S. 156 (1962)........................................................................9, 14

*Comcast Corp. v. Fed. Commc'n Comm'n*,
  579 F.3d 1 (D.C. Cir. 2009) .................................................................11

*Conservation Law Found. v. Pritzker*,
  37 F. Supp. 3d 254 (D.D.C. 2014).......................................................7, 9

*Cook County v. Wolf*,
  498 F. Supp. 3d 999 (N.D. Ill. 2020) ......................................................9

*Cook County v. Wolf*,
  Case: 1:19-cv-06334, slip. op. (N.D. Ill. Aug. 17, 2021) ......................10

*Cook County v. Wolf*,
  Case No. 20-3150 (7th Cir. Mar. 9, 2021) ............................................10

*Env't Def. Fund v. Fed. Energy Regul. Comm'n*,
  2 F.4th 953 (D.C. Cir. 2021)...................................................................6

*Equal Rights Ctr. v. Post Properties, Inc.*,
  633 F.3d 1136 (D.C. Cir. 2011)............................................................17

*Lau v. Nichols*,
  414 U.S. 563 (1974)................................................................................2

CORE/3521722.0002/169511687.1

*Limnia, In. v. Dept. of Energy,*
  857 F.3d 379 (D. C. Cir. 2017)...................................................................................6

*Reiter v. Cooper,*
  507 U.S. 258 (1993)....................................................................................................18

*Sierra Club v. Morton,*
  405 U.S. 727 (1972)....................................................................................................17

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
  282 F.Supp.3d 91 (D.D.C. 2017)...............................................................................7

*State of Washington v. Dep't of Homeland Security,*
  Case No. 4:19-cv-05210-RMP, slip. op. (E.D. Wash. Oct. 19, 2019)....................10

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.,*
  485 F. Supp. 3d 1 (D.D.C. 2020)..............................................................8, 12, 13, 14, 17

**Statutes**

Patient Protection and Affordable Care Act

42 U.S.C. 18001, *et seq*..............................................................................................1

Section 1554, 42 U.S.C. § 18114...........................................................................2, 8, 13

Section 1557, 42 U.S.C. § 18116.................................................................................1

**Regulations**

45 C.F.R. § 92.101.........................................................................................................3

45 C.F.R. § 92.4(4) (2016)............................................................................................2

45 C.F.R. § 92.8(f)-(g) (2016).......................................................................................2

**Other Authorities**

*Advancing Racial Equity and Support for Underserved Communities through the
  Federal Government*, Exec. Order No. 13985, 86 Fed. Reg. 7,009 ..................19, 20

*Inadmissibility on Public Charge Grounds,* 84 Fed. Reg. 41,292 (Aug. 14, 2019) .......................9

*Nondiscrimination in Health and Health Education Programs or Activities,* 85
  Fed. Reg. 37,160 (June 19, 2020) .........1, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20

*Nondiscrimination in Health Programs and Activities*, 81 Fed. Reg. 31,376 (May
  18, 2016) ....................................................................................2, 4, 7, 8, 9, 10, 14, 20

CORE/3521722.0002/169511687.1

*Inadmissibility on Public Charge Grounds; Implementation of Vacatur,* 86 Fed.
Reg. 14,221 (Mar. 15, 2021) .................................................................................10

*Public Charge Ground of Admissibility, Advance Notice of Proposed Rulemaking
and Notice of Virtual Public Listening Sessions,* DHS Docket No. USCIS-
2021-0013, 86 Fed. Reg. 47,025 (Aug. 23, 2021) .................................................10

CORE/3521722.0002/169511687.1

## I.      INTRODUCTION

In their motion, Defendants move the Court for voluntary remand, without vacatur, of the portions of the Nondiscrimination in Health and Health Education Programs or Activities, 85 Fed. Reg. 37,160 (June 19, 2020) (the "2020 Rule") challenged by Plaintiffs. Voluntary remand without vacatur of the 2020 Rule will continue to impose harm on Plaintiffs and the limited English proficient ("LEP") clients they serve during and beyond the reconsideration period proposed by the Defendants. When the U.S. Department of Health and Human Services ("HHS") implemented the 2020 Rule in August 2020, LEP individuals, including older adults, lost the language access protections they depended on to effectively access health care. Given Defendants' acknowledgment of the faults with the 2020 Rule and the ongoing harm the 2020 Rule has caused to LEP older adults, it is inexplicable why they would allow this harm to continue while the rulemaking process meanders along.

Accordingly, Plaintiffs respectfully request that if the Court grants Defendants' request for voluntary remand, the 2020 Rule should also be vacated. In the alternative, Plaintiffs request that the case remain on the docket subject to a stay pending modification of the 2020 Rule, with regular status updates to the Court.

## II.     BACKGROUND

### A.      Section 1557 of the ACA

Congress enacted the Patient Protection and Affordable Care Act ("ACA") in 2010. 42 U.S.C. 18001 *et seq*. The ACA's civil rights provision, Section 1557, was the first federal civil rights law to expressly and comprehensively prohibit discrimination in health care and in health insurance. Section 1557 incorporated protected classifications and enforcement mechanisms from other civil rights laws including Title VI of the Civil Rights Act (national origin, which includes

language)[1] and the Age Discrimination Act of 1975 (age) by prohibiting all health programs and activities (such as medical providers, health systems, and health insurers) receiving federal financial assistance from discriminating against individuals on a broad range of protected characteristics, including age and national origin. *Id.* § 18116(a). A companion provision, Section 1554, also prohibits the Secretary of HHS from:

> promulgat[ing] any regulation that—(1) creates unreasonable barriers to the ability of individuals to obtain appropriate medical care; (2) impedes timely access to health care services; (3) interferes with communications regarding a full range of treatment options between the patient and provider; (4) restricts the ability of health care providers to provide full disclosure of all relevant information to patients making health care decisions; (5) violates the principles of informed consent and the ethical standards of health care professionals; or (6) limits the availability of health care treatments for the full duration of a patient's medical needs.

42 U.S.C. § 18114.

### 1.    The 2016 Rule

In 2016, HHS issued a final rule implementing Section 1557's broad antidiscrimination mandate. Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,376 (May 18, 2016) ("2016 Rule"). Among the 2016 Rule's requirements, covered entities[2] had to: (1) post notice of individuals' right to health care free of discrimination (the "notice" provision), and (2) include taglines in at least the top fifteen languages spoken by individuals with limited English proficiency in that state in "conspicuous physical locations where the entity interacts with the public" and in significant communications (the "tagline" provisions). *Id.* at 31,469 (formerly codified at 45 C.F.R. § 92.8(f)-(g) (2016)); *see also id.* at 31,468 (defining taglines as "short statements written in non-English languages that indicate the availability of language assistance services free of charge").

---

[1] *Lau v. Nichols*, 414 U.S. 563, 568 (1974).
[2] "Covered entities" are generally entities principally engaged in the business of providing health care that receive Federal financial assistance. 45 C.F.R. § 92.4(4) (2016).

Together, the 2016 Rule's notice and tagline provisions ensured that LEP individuals, including older adults, could understand their rights, including how to file a complaint of healthcare-related discrimination, and healthcare-related information such as health insurance costs and coverage, and medical procedures and treatment. These protections are especially important during public health emergencies, such as the current COVID-19 crisis. It is well-documented that older adults are at higher risk for hospitalization and death from COVID-19. *See*, *e.g.*, Josh Holder & Amy Schoefeld Walker, *Many Older Americans Still Aren't Vaccinated, Making the Delta Wave Deadlier*, N.Y. Times, (Aug. 24, 2021), https://www.nytimes.com/interactive/2021/08/24/world/vaccines-seniors.html. Older adults who are also LEP face significant systematic barriers to obtaining care and treatment for COVID-19. *See, e.g.*, Martha Bebinger, *Boston Hospital Examined Why Latinos Are Especially Vulnerable To COVID*, NPR (Apr. 22, 2021), https://www.npr.org/2021/04/22/989728130/hospital-looks-into-why-latinos-are-especially-vulnerable-to-covid-19; Lisa C. Diamond, et al., *Providing equitable care to patients with limited dominant language proficiency amid the COVID-19 pandemic*, 103(8) Patient Educ Couns., 1451 (June 19, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7304953/.

### 2.    The 2020 Rule

In finalizing the 2020 Rule, HHS disregarded many of the comments submitted in response to the Notice of Proposed Rulemaking preceding issuance of the 2020 Rule. Numerous comments warned that the proposed changes would weaken the 2016 Rule's robust civil rights protections, thereby exacerbating health disparities and adverse health outcomes. Compl. ¶ 52 (D.E. # 1). Nonetheless, the 2020 Rule proceeded to eviscerate much of the 2016 Rule's civil rights protections, including the notice and tagline requirements. Now, the 2020 Rule merely requires covered entities to "take reasonable steps to ensure meaningful access," 45 C.F.R. § 92.101,

3

leaving significant discretion to covered entities to determine reasonableness. Enforcement is dependent on LEP individuals filing complaints, made more unlikely by the 2020 Rule's elimination of the notice informing them — in a language they understand — of the right to do so and the fact that many LEP older adults receive care from a myriad of covered entities. Compl. ¶ 59 (D.E. # 1). HHS justified the removal of these notice and tagline protections based primarily on the costs to covered entities without considering several viable alternatives, the fact that much of the costs were already "sunk," and the costs to LEP health care consumers. *Id.* ¶¶ 60-66.

The 2020 Rule's reversal of the former Rule's protections harms the over 6.5 million LEP older adults over the age of 60 — including some four million Medicare beneficiaries who are LEP — and the community-based organizations that serve them. *Id.* ¶ 13. LEP older adults rely primarily on paper documents to obtain health care information and to pay bills, and use medical services more frequently than their younger counterparts. *Id.* ¶ 87. Now, those who are LEP have to navigate a health care system (and an ongoing public health emergency) without adequate language assistance services. They may be unable to assess medical treatment options, express care choices, follow treatment or medication instructions, or otherwise seek assistance, potentially leading to lower quality of care, gaps in service, and medical errors. *Id.* ¶ 89.

**B.      Procedural History**

Plaintiffs filed their complaint on February 5, 2021. In their complaint, Plaintiffs assert that the 2020 Rule reverses the protections of the 2016 Rule without foundation or justification, and instead perpetuates the inequities that Section 1557 was intended to address. Specifically, HHS violated the Administrative Procedures Act ("APA") when, contrary to law and arbitrarily and capriciously, it eliminated the notice and tagline provisions of the 2016 Rule.

Following the effective date of the 2020 Rule, Plaintiffs faced a documented surge in demand for language assistance services from LEP older adults, which impaired their regular

CORE/3521722.0002/169511687.1

operations. Specifically, Plaintiff Chinatown Service Center directed staff to work overtime, brought on additional volunteers, and had difficulty meeting other contract deliverables due to diverted staff. *Id.* ¶¶ 69-76. Plaintiff St. Barnabas Senior Services similarly rearranged its services and shifted funds to meet demand for language assistance, including services related to the COVID-19 vaccine rollout. *Id.* ¶¶ 77-86.

Several months ago, the parties first discussed Defendants' proposal to stay proceedings in light of President Biden's Executive Order, Advancing Racial Equity and Support for Underserved Communities through the Federal Government, Exec. Order No. 13985, 86 Fed. Reg. 7,009 (Jan. 20, 2021), and HHS's announcement that it intended to initiate a new rulemaking proceeding under Section 1557 in April 2022, Spring 2021 Unified Agenda of Federal Regulatory and Deregulatory Actions, Office of Information and Regulatory Affairs, Office of Management and Budget, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=0945-AA17. Plaintiffs, however, were concerned with the indeterminate timeline for the release of a potential final rule and the scope of such a rule. Based on Defendants' representation that the new rule may address the language access concerns raised by Plaintiffs' suit, Plaintiffs agreed to a limited stay until July 16, 2021 "to better understand and evaluate HHS's announced plans for a new rulemaking and to conserve judicial resources." Jt. Mtn. to Stay Proceedings at 3 (D.E. # 18).

At the end of the stay period, Plaintiffs remained concerned that the Defendants' announced rulemaking plans were still undefined with no concrete steps taken or express commitment to addressing the specific concerns raised in this lawsuit. Jt. Status Rep. Regarding Further Stay of Proceedings at 2 (D.E. # 19). The parties were unable to reach agreement on continuing the stay. Subsequently, Defendants filed their present motion for voluntary remand, or, in the alternative, a stay of proceedings. Although Defendants have publicly committed to issuing

5

a notice of proposed rulemaking in April 2022, Plaintiffs remain concerned about the scope of any proposed rule and that the harms imposed by the 2020 Rule will continue during the lengthy rulemaking process.

## III. ARGUMENT

### A. Voluntary Remand is Appropriate Only if the 2020 Rule Is Vacated

Granting voluntary remand is "typically appropriate only when the agency intends to revisit the challenged agency decision on review." *Limnia, In. v. Dept. of Energy*, 857 F.3d 379, 381 (D. C. Cir. 2017). While such relief is not dependent on a defendant's confession of error, *id.*, here, Defendants acknowledge that they do not merely intend to "revisit" the 2020 Rule, but to revise it. In support of their motion, Defendants admit "substantial and legitimate concerns with the 2020 Rule," including the 2020 Rule's LEP provisions. Defs.' Mtn. for Voluntary Remand, or, in the Alt., a Stay of Proceedings (hereinafter "Motion"), at 10 (D.E. # 20). Indeed, the agency has admitted that its concerns with the 2020 Rule are significant: it is "HHS's intention to embark upon an imminent rulemaking process *to revise or replace the rule*." *Id.* (emphasis added). Thus, Defendants argue, a voluntary remand is appropriate. *Id.*

Plaintiffs agree that remand is appropriate. But, Plaintiffs cannot agree that the voluntary remand should be granted without vacatur of the provisions that replaced the 2016 Rule's notice and tagline provisions. "Vacatur 'is the normal remedy' when we are faced with unsustainable agency action." *Env't Def. Fund v. Fed. Energy Regul. Comm'n*, 2 F.4th 953, 976 (D.C. Cir. 2021), (quoting *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 117 (D.C. Cir. 2020)). Of course, this Court has not reached the merits of the APA claims in this case. But, while HHS has not admitted error, in acknowledging its own "substantial and legitimate concerns" with the existing 2020 Rule and its intent to "revise or replace" that Rule, it has come pretty close. In either case, HHS recognizes that a remand of the 2020 Rule is needed.

CORE/3521722.0002/169511687.1

1.      **The 2020 Rule Suffers from Serious Deficiencies that Require Remand with Vacatur.**

This Court employs the D.C. Circuit's two-prong test for determining what kind of remand, if any, is appropriate. In determining whether remand with (or without) vacatur is appropriate, this Court looks at "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)" and then weighs "the disruptive consequences of an interim change . . . ." *Conservation Law Found. v. Pritzker*, 37 F. Supp. 3d 254, 270-71 (D.D.C. 2014) (citing *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)). In analyzing the first prong, this Court examines whether an otherwise invalid rule may be saved if an agency is able to justify its decision on remand. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F.Supp.3d 91, 97 (D.D.C. 2017). That is not the case here.

First, an error of law requiring reversal cannot be corrected on remand. Where a bare "remand would be futile," vacatur is appropriate. *Conservation Law Found.*, 37 F. Supp.3d at 272. Plaintiffs' complaint alleges an error of law — violation of Section 1554 of the ACA — that cannot be corrected and still preserve the regulation. Plaintiffs contend, *inter alia*, that HHS' repeal of the LEP notice and tagline provisions was unlawful under Section 1554 because it violated the Section's prohibition against the promulgation of "any regulation" that "impedes timely access to health care services" and "interferes with communications regarding the full range of treatment options between the patient and provider." Compl. ¶¶ 29, 95-98 (D.E. # 1). By HHS's own account, the 2016 Rule facilitated access to health care by increasing LEP individuals' understanding of their rights and improving their ability to communicate with providers about treatment options. 85 Fed. Reg. at 37,162. By definition, the elimination of the 2016 Rule's notice and tagline requirements was a "regulation" that removed protections accorded to LEP individuals under that Rule. In that respect, HHS' elimination of an existing protection constituted "direct government

interference with health care." *California ex rel. Becerra v. Azar*, 950 F.3d 1067, 1094 (9th Cir. 2020) (*en banc*). That is, the 2020 Rule is a facially prohibited regulation contrary to the unequivocal terms of Section 1554 prohibiting any regulation that "impedes timely access to health care services" or "interferes with communications regarding a full range of treatment options between the patient and provider." 42 U.S.C. § 18114. Given HHS' own finding in the 2016 Rule that the notice and tagline provisions increased LEP individuals' understanding of their rights and treatment options, the elimination of that protection, almost by definition, will have "demonstrated negative consequences for the 'ability of [LEP] individuals to obtain appropriate medical care' or 'timely access to health care services.'" *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, 485 F. Supp. 3d 1, 53 (D.D.C. 2020) (citing *California*, 950 F.3d at 1094).

Remand with vacatur is also necessary given HHS' arbitrary cost/benefit analysis of the 2020 Rule. In issuing the 2020 Rule, HHS found that at least some compliance costs incurred by covered entities, "such as revising internal documents, IT costs, and setting up relationships with outside vendors" were already "sunk." 85 Fed. Reg. at 37,232. That is, covered entities would save no money by terminating some of the notices and taglines they have been providing. *See id.* Yet, it concluded that while the 2020 Rule "does not prohibit entities from continuing to provide the type and number of notices and taglines required by the 2016 Rule," it nonetheless "gives covered entities the flexibility to *not* provide them." 85 Fed. Reg. at 37,232 (emphasis added). This is illogical and arbitrary. *See* Compl. ¶ ¶ 61, 122-125 (D.E. # 1). Having found that repealing the notice and tagline requirement "may impose costs, such as decreasing access to, and utilization of health care for non-English speakers," 85 Fed. Reg. at 37,232, it makes no sense to allow covered entities to terminate at least those services that would cost them little or nothing to continue to provide. It is quintessentially arbitrary agency action when an agency fails to "articulate any

rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. U.S.*, 371 U. S. 156, 168 (1962).

### 2.   HHS's Disruption Arguments Against Vacatur Lack Merit.

Next, this Court examines the "disruptive consequences" of potential vacatur. *Conservation Law Found.*, 37 F. Supp.3d at 271. Defendants argue that "[r]equiring regulated parties to transition from the 2020 Rule to the 2016 Rule, and then to the agency's new rule would likely be disruptive." Motion at 14. Defendants' stated concern is that if the 2020 Rule is vacated, "the 2016 Rule would be revived only for so long as it takes the agency to issue its new rule." *Id.* This concern, however, rings hollow. One need only look to the position the Government has recently taken with respect to litigation in two cases involving rule challenges:  one involving the Public Charge rule and the other a rule governing natural gas pipelines.

In August 2019, the Department of Homeland Security ("DHS"), issued a final rule, Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019), that, among other things, increased the likelihood that even immigrants employed full-time, but in minimum wage jobs, would be considered "public charges" and thus, ineligible for permanent legal residence because they might temporarily rely on public benefits, like food stamps. It also nearly guarantees that low-income older immigrants would be deemed "public charges," ineligible for entry or permanent legal residence, because of their high health care needs, limited English proficiency, and reliance on Medicaid and other supports. A number of challenges were brought to the rule and, relevant here, the district court for the Northern District of Illinois ruled on the merits that the rule both exceeded DHS's authority and was arbitrary and capricious and set the rule aside in its entirety. *Cook County v. Wolf*, 498 F. Supp. 3d 999, 1004-05 (N.D. Ill. 2020).[3]

---

[3] Similar challenges to the public charge rule were brought in several other district courts. Of relevance to this case, the district court for the Eastern District of Washington granted a

While DHS first appealed the district court's ruling to the Seventh Circuit, it subsequently voluntarily withdrew its appeal of that decision. As a result, the Seventh Circuit issued its mandate, leaving in place the district court's final judgment vacating the rule. Notice of Issuance of Mandate, *Cook County v. Wolf*, No. 20-3150 (7th Cir. Mar. 9, 2021). A week later DHS issued a final rule implementing the vacatur order, the effect of which was to restore the agency's 1999 public charge policy. Inadmissibility on Public Charge Grounds; Implementation of Vacatur, 86 Fed. Reg. 14,221 (Mar. 15, 2021) (codified at 8 C.F.R. §§ 103, 106, 212-14, 245, 248). DHS did so even though it has since announced its intentions, similar to HHS' announcement in this case, to adopt a new public charge rule. Public Charge Ground of Admissibility, Advance Notice of Proposed Rulemaking and Notice of Virtual Public Listening Sessions, DHS Docket No. USCIS-2021-0013, 86 Fed. Reg. 47,025 (Aug. 23, 2021).  That announcement, moreover, (and the defendants' decision not to oppose vacatur) were foreshadowed by public pronouncements from the then incoming Biden Administration months earlier, as noted by the Northern District of Illinois. *Cook County v. Wolf*, Case: 1:19-cv-06334, slip. op. at 13-17 (N.D. Ill. Aug. 17, 2021) (denying late intervention by State of Texas).

In that case, however, by not contesting vacatur (while the agency contemplates a new rule) the defendants knew that they would be putting the prior rule back into effect. Similarly, here, there is nothing preventing Defendants from also supporting vacatur of a rule HHS no longer finds viable. This would allow the 2016 Rule to become effective, while the new proposed rule winds its way through the notice and comment process.

---

preliminary injunction against the rule premised, in part, on its determination that the former rule would "have a substantial negative impact on the elderly." *State of Washington v. Dep't of Homeland Security*, Case No. 4:19-cv-05210-RMP, slip. op. at 19  (E.D. Wash. Oct. 19, 2019). The impacted population in that case substantially overlaps with that served by Plaintiffs — LEP older adults.

The disruption to covered entities that would again be subject to the 2016 Rule's notice and tagline requirements, moreover, does not warrant continuing a rule that is arbitrary, capricious, and contrary to law. *Environmental Defense Fund*, *supra*, underscores the weakness of Defendants' disruption argument. There, the agency (the Federal Energy Regulatory Commission) had authorized the construction and operation of a multimillion-dollar natural gas pipeline — and the pipeline was already operational. *Envtl. Def. Fund*, No. 20-1016 at 36. But, in vacating the certificate the agency had granted to the pipeline owner, the court noted that the disruption created by "de-issuance of the Certificate" was "weighty only insofar as the agency may be able to rehabilitate its rationale." *Id.* (quoting *Comcast Corp. v. Fed. Commc'n Comm'n*, 579 F.3d 1, 9 (D.C. Cir. 2009)).

Here, in stating its plan to revise or replace the 2020 Rule, HHS has signaled that it has no intention of trying to "rehabilitate its rationale." It would seem obvious that de-issuance of a pipeline certificate is considerably more disruptive than restoring notice and tagline verbiage that the covered entities are already familiar with: they likely have the necessary information and documents on their servers, knowledge about which documents to include with "significant communications," and the processes and procedures for complying with the former Rule's requirements.

**B.    Defendants' Argument that Plaintiffs will not be Prejudiced by a Remand without Vacatur also Lacks Merit.**

Defendants maintain that "Plaintiffs will not be unduly prejudiced by a remand because this Court previously determined that similar claims are not likely to succeed on the merits." Motion at 13. This argument is problematic on several levels.

**1.    Defendants' Argument is Irrational Given their Admission of "Substantial and Legitimate Concerns with the 2020 Rule"**

11

First, the argument that Plaintiffs are not prejudiced because their claims lack merit cannot logically be squared with HHS's premise for seeking a voluntary remand: it has "substantial and legitimate concerns with the 2020 rule," which includes that Rule's language access provisions. Motion at 10. Indeed, as discussed above, these concerns are so substantial that it is "HHS's intention to embark upon an imminent rulemaking process to revise or replace the rule." *Id.*

### 2.    Plaintiffs' Complaint is Distinct from that of the Plaintiffs in *Whitman-Walker*

Despite Defendants' claims to the contrary, Plaintiffs' complaint is also materially distinct from that of the plaintiffs in *Whitman-Walker*. In its motion, Defendants observe that "[i]n [*Whitman-Walker Clinic, Inc.*], the Court denied a preliminary injunction as to the language access provisions of the 2020 Rule, noting that "to justify a change in policy, an agency must 'display awareness that it is changing position' and 'must show that there are good reasons for the new policy[,]'" and "HHS did both." Motion at 13. Defendants argue that Plaintiffs' "similar claims are not likely to succeed on the merits." *Id.* at 13. But while there is overlap between Plaintiffs' claims and those of the *Whitman-Walker* plaintiffs, Plaintiffs here have made several distinct claims.

The plaintiffs in *Whitman-Walker* did raise claims asserting that the 2020 Rule "creates unreasonable barriers and impedes timely access to health care by reversing protections against discrimination of historically marginalized communities and eliminating access to language provisions," in violation of Section 1554. Compl. ¶ 248, *Whitman-Walker Clinic, Inc.*, 1:20-cv-01630, (D.D.C. June 22, 2020). While the Court found that the plaintiffs in that case were unable to establish that the 2020 Rule imposed "'substantive barrier on individuals' ability to obtain appropriate medical care,'" *Whitman-Walker Clinic, Inc.*, 485 F. Supp. 3d at 53 (quoting *California*, 950 F.3d at 1095), it also "preserve[d] the possibility that a regulation generating

CORE/3521722.0002/169511687.1

sufficiently severe and demonstrated negative consequences for the 'ability of individuals to obtain appropriate medical care" or "timely access to health care services' might violate Section 1554. *Id.* (citation omitted).

The posture and experiences of the plaintiffs in *Whitman-Walker* differ materially from those of Plaintiffs here. The plaintiffs in *Whitman-Walker* filed their complaint in June 2020 — well before the 2020 Rule went into effect in August 2020. Here, Plaintiffs filed their complaint several months after the 2020 Rule's effective date, and thus, were able to set forth documented, concrete harms they experienced as a result of the rule change in their complaint, and how those harms erect "unreasonable barriers," and "interferes with communications" in violation of Section 1554. 42 U.S.C. § 18114.

As discussed above, both Plaintiffs experienced a surge in demand for interpretation and translation services, which interfered with their normal operations, preventing them from meeting other obligations or deliverables. For example, Plaintiff Chinatown Service Center's clients benefited from the 2016 Rule's "requirement that healthcare providers included taglines in Chinese and notices of rights, including the right to free language assistance services . . . ." Decl. Chinatown Service Center ¶ 9 (D.E. # 1-6). Thus, clients relied less on the Center's staff to translate and interpret their mail. *Id.* After the 2020 Rule went into effect, the Center experienced a surge in demand for their language assistance services, resulting in increased staffing and de-prioritization of other work. *Id.* ¶¶ 13-16. During the COVID-19 vaccine rollout, Chinatown Service Center has been "flooded with requests for help from LEP older adult clients . . . ." *Id.* ¶ 16. Plaintiff Saint Barnabas Senior Services experienced a similar dynamic, particularly with the demand for in-language assistance with booking vaccine appointments straining their operations. Decl. St.

Barnabas Senior Services ¶¶ 9-16. It is unlikely this extraordinary demand for language assistance would have happened but for the 2020 Rule.

Plaintiffs' claims of arbitrariness differ from those of the plaintiffs in Whitman-Walker as well. For example, this Court found that, "[o]n [the Whitman-Walker] record, and especially in light of HHS's analysis of the limited benefits of the notice and tagline requirements in relation to their significant burdens, [it] cannot conclude that Plaintiffs have established that HHS "failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency." *Whitman-Walker Clinic, Inc.*, 485 F. Supp. 3d. at 52 (citation omitted). But, as noted in Plaintiffs' Complaint and above, there is at least one aspect of HHS's 2020 Rule that runs directly counter to the agency's own findings. HHS found that at least some costs incurred by covered entities to comply with the 2016 Rule, "such as revising internal documents, IT costs, and setting up relationships with outside vendors" were "sunk." 85 Fed. Reg. 37,232. Yet, while not barring entities from continuing to "to provide the type and number of notices and taglines required by the 2016 Rule, the 2020 Rule illogically "gives covered entities the flexibility to not provide them." 85 Fed. Reg. at 37,232 (emphasis added). As Plaintiffs noted earlier, this disconnect between the agency's findings and conclusions — i.e., between the "facts found and the choice made" — is quintessentially arbitrary agency conduct. *Burlington Truck Lines, Inc.*, 371 U. S. at 168.

3.   **Plaintiffs and the LEP Older Adults They Serve Continue to Experience Harm from the 2020 Rule.**

Every day the 2020 Rule is in effect, the harm to LEP older adults compounds. This is because covered entities took time after implementation of the 2020 Rule to change their systems to remove taglines. At the same time, older adults are increasing their interactions with covered entities as they return to routine and other care that was delayed because of the pandemic, and

those living in communities with high transmission rates of COVID-19, particularly the Delta variant, continue to require urgent care.

As the COVID-19 pandemic continues and the Administration considers recommending vaccine booster shots to older adults in nursing facilities and those living in the community, the removal of taglines will once again pose a barrier for those with LEP. In the initial months of responding to the COVID-19 pandemic, challenges with language access in health care were already well documented. Nat'l Health Law Program, Compl. to HHS Office for Civil Rights, "RE: Discriminatory provision of COVID-19 services to persons with limited English proficiency," (filed Apr. 30, 2021), https://healthlaw.org/wp-content/uploads/2021/04/OCR-LEP-Complaint-4-30-21-for-publication.pdf. This time, however, the lack of notification will be more widespread as more covered entities have removed taglines from their communications as allowed by the 2020 Rule. Justice in Aging's own review has revealed that some health insurance plans have stopped including taglines in the top fifteen languages, often only leaving a tagline in Spanish and one or two other languages at the very end of communications. *E.g.*, UnitedHealthcare Medicare Advantage Assure (HMO), Summary of Benefits 2021, Medicare Advantage Plan with Prescription Drugs, 12 (2021) https://www.aarpmedicareplans.com/alphadms/ovdms10g/groups/ov/@ov/@highrespdf/documents/highrespdf/4902411.pdf (last accessed Sept. 14, 2021) (taglines only in Spanish and Chinese); UnitedHealthcare Canopy Health Medicare Advantage (HMO), Complete Drug List (Formulary) 2021, 134 (July 1, 2021) https://www.aarpmedicareplans.com/alphadms/ovdms10g/groups/ov/@ov/@highrespdf/documents/highrespdf/4984544.pdf (last accessed Sept. 14, 2021) (same). Simultaneously, many health insurance plans, including those serving Medicare enrollees, are no longer waiving co-insurance

for COVID-19 treatment. AHIP, *Health Insurance Providers Respond to Coronavirus (COVID-19)* (last accessed Sept. 2, 2021), https://www.ahip.org/health-insurance-providers-respond-to-coronavirus-covid-19/; Jared Ortaliza, et al, Peterson-KFF, Health Tracker, *Most private insurers are no longer waiving cost-sharing for COVID-19 treatment* (Aug. 19, 2021), https://www.healthsystemtracker.org/brief/most-private-insurers-are-no-longer-waiving-cost-sharing-for-covid-19-treatment/. Communications about coverage of COVID-19 treatment and services may be especially confusing given the evolving changes in public health and policy. Without taglines, LEP older adults receiving this information will not be able to understand it or be notified in a language they can understand of their right to get assistance.

In turn, Plaintiffs continue to receive more requests for language assistance than before the 2020 Rule became effective. As LEP older adults continue to interact with many health care providers for both non-COVID care and for COVID vaccinations and treatment amid the current spike due to the Delta variant, their need for language assistance also persists. Because the 2020 Rule no longer requires covered entities to notify individuals of their right to an interpreter, however, LEP older adults continue to turn to Plaintiffs for language assistance.

### 4. Complaints Against Individual Covered Entities will not Remedy the Harm to Plaintiffs and the LEP Older Adults They Serve.

Plaintiffs will be unduly prejudiced by remand or a stay without vacatur, as the 2020 Rule will continue to harm them pending the agency's assessment of its policy. Defendants argue that the harm experienced by Plaintiffs could be remedied by filing individual complaints against individual covered entities with HHS's Office of Civil Rights ("OCR"). Motion at 14. But this argument conflates the inclusion of specific examples of how covered entities have relied on the 2020 Rule's changes to the detriment of Plaintiffs — made for the purpose of establishing standing — with a complaint against a covered entity operating under the 2020 Rule. Motion at 2, 13-14,

17. Plaintiffs here seek to challenge the 2020 Rule itself; including facts to establish standing does not change the nature of this litigation. "[T]he fact of economic injury is what gives a person standing to seek judicial review under the statute, but once review is properly invoked, that person may argue the public interest in support of his claim that the agency has failed to comply with its statutory mandate." *Sierra Club v. Morton*, 405 U.S. 727, 737-38 (1972).

As discussed above, both Plaintiffs have described specific ways in which they are injured by the 2020 Rule's elimination of notice and tagline protections. Compl. ¶¶ 18-21; 69-86 (D.E. # 1). Their allegations about operational strain triggered by the 2020 Rule establish the requisite harm and other requirements for Article III standing. *See, e.g., Equal Rights Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011) (plaintiff must show injury, causation, and redressability for organizational standing). But Plaintiffs' contentions regarding harm *resulting* from the 2020 Rule, such as increased demand for language assistance services, are not equivalent to Plaintiffs' legal challenge, which consists of APA claims against HHS. Compl. ¶¶ 94-130 (D.E. #1). Similarly, in *Whitman-Walker Clinic*, the plaintiff health care providers alleged harm based on increased demand and operational strain caused by their patients' fear of discrimination by other health care entities. 485 F. Supp. 3d at 20-21. That did not mean that the plaintiff clinics were required to file discrimination complaints against other health care entities, but it did mean that they had sufficiently alleged an injury-in-fact. *Id*. at 21-22; *see also Sierra Club*, 405 U.S. at 737-38.

Thus, HHS's suggestion that Plaintiffs file complaints with OCR, or otherwise sue covered entities, misses the point. Motion at 13-14. HHS cites no authority requiring Plaintiffs to take these actions, because there is none. Plaintiffs are *challenging* the 2020 Rule for deficiencies they have described in detail, *see, e.g.*, Compl. ¶¶ 55-59 (D.E. #1); they do not seek to enforce it. There is no

CORE/3521722.0002/169511687.1

statutory or regulatory requirement that Plaintiffs file one or a multitude of OCR complaints to enforce a rule that is harming rather than adequately protecting them, nor would OCR have the authority to vacate the challenged portions of the 2020 Rule on the basis of individual complaints.[4]

It *would*, moreover, actually prejudice Plaintiffs to take the unfeasible and inefficient step of filing individual complaints against each and every insurance company, health care provider, government agency, and other covered entity that fails to protect the rights of the LEP older adults they serve. *See, e.g.*, Chinatown Service Center Decl. ¶¶ 6-12 (D.E. # 1-6)  (in the last five months of 2020, Chinatown Service Center helped nearly 2000 individuals per month who required assistance with reading letters, which are routinely from covered entities such as health care companies). Plaintiffs seek to address the root cause of the problem and restore the systemic LEP protections that they contend were unlawfully and arbitrarily eliminated by the 2020 Rule. The only logical method for doing so is via a challenge to the 2020 Rule itself.

### C.    In the Alternative, the Court Should Grant a "Stayed Vacatur" or Other Time-Limited Stay with Reporting Requirements.

Should the Court find immediate remand with vacatur inappropriate, Plaintiffs respectfully request, in the alternative, that the Court instead stay the vacatur until HHS issues its Notice of Proposed Rulemaking in April 2021. Office of Information and Regulatory Affairs, Office of Management                                        and                                        Budget, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=0945-AA17.

In *Center for Biological Diversity v. Ross*, this Court found that:

> Vacatur plus a nine-month stay is also appropriate, in the Court's equitable discretion, because it gives NMFS [the government agency] an incentive to complete the Plan amendments within the timeframe the agency has provided. See Nat. Res. Def. Council, 489 F.3d at 1264 (Randolph, J., concurring) ("The existence

---

[4] *See Reiter v. Cooper*, 507 U.S. 258, 268 (1993), which, contrary to Defendants' implication, actually *supports* Plaintiffs' position as it makes clear that staying proceedings to seek an administrative ruling is applicable only when the relevant agency can provide the relief sought.

of a stay with time limits, rather than an open-ended remand without vacating, will give the agency an incentive to act in a reasonable time . . . ."); *see also Anacostia Riverkeeper, Inc. v. Pruitt*, No. 09-98, 2017 WL 6209176, at *1 (D.D.C. Sept. 15, 2017) (noting "advantages to be gained by setting a deadline" by which stay of vacatur will expire).

480 F.Supp.3d 236, 246 (D.D.C. 2020). Such a vacatur plus stay would ensure that HHS follows through on its stated intentions. The 2021 Spring Unified Agenda of Federal Regulatory and Deregulatory Actions posting from the Office of Information and Regulatory Affairs does not actually commit to address the 2020 Rule's problematic language access provisions. HHS, Office of Civil Rights, https://www.hhs.gov/civil-rights/for-individuals/section-1557/index.html (only discussing intent to comply with the Supreme Court's opinion regarding sex discrimination in the context of Section 1557). *Cf. Belmont Abbey College v. Sebelius*, 878 F.Supp.2d 25, 36 (D.D.C. 2012) (this Court found lack of standing because agency publicized specific plans to amend the rule to address the specific issues raised by the plaintiffs and issued an Advance Notice of Proposed Rulemaking).

Similarly, the Declaration of Robinsue Frohboese, Acting Director and Principal Deputy Director of the Office of Civil Rights, Department of Health and Human Resources, does not specifically address language access or the issues raised by Plaintiffs. Decl. of Frohboese, D.E. # 20-1. In the Frohboese Declaration, OCR made only general representations as to how it would address any changes to the 2020 Rule. While the Motion represents HHS' intention to address the language provisions and to revise its 2020 Rule, OCR's affiant did not commit to specifically restoring or improving upon the notice and tagline requirements. Affiant Frohboese only committed to "reconsideration of the 2020 Rule [] based on the substantial and legitimate need to ensure the 2020 Rule's provisions adequately advance the Administration's policy as articulated in EO 13985."  Decl. of Frohboese ¶ 10 (D.E. # 20-1). Executive Order 13985 is an executive order issued on January 20, 2021 signifying a high level commitment by the Biden Administration

CORE/3521722.0002/169511687.1

to advancing equity for all. But it does not mention language access or LEP persons. 86 Fed. Reg. 7,009. Absent outright vacatur, a stayed vacatur will hold HHS to the stronger representations made in its present motion.

Finally, if the Court is disinclined to issue a stayed vacatur, Plaintiffs respectfully request that this court maintain jurisdiction over this case while issuing a time-limited stay until HHS issues a Notice of Proposed Rulemaking, with periodic status reports regarding its progress to the Court. *Cf. Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382, 389 (D.C. Cir. 2012) (holding case in abeyance with regular reporting pending proposed rulemaking). A time limited stay would allow the Defendants the opportunity to engage in their review of the 2020 Rule, engage in any rule making it deems appropriate, and also allow this case to resume should the revised rule fail to address the claims brought by Plaintiffs.

## IV.    CONCLUSION

Needless to say, despite an agency's best intentions, the rulemaking process is a lengthy and complex one. Although Plaintiffs are encouraged that HHS is considering their concerns in its reconsideration of the 2020 Rule, a promise to take concrete action at some future date is insufficient to stem the ongoing harm to Plaintiffs and the LEP older adults they serve. Accordingly, Plaintiffs respectfully request that the Court order remand with vacatur so that Plaintiffs and LEP individuals can enjoy the protections of the 2016 Rule while HHS undertakes the rulemaking process.

Dated: September 17, 2021

Respectfully submitted,

/s/*Carol A. Wong* _____

DENNY CHAN*
(CA Bar No. 290016)
*dchan@justiceinaging.org*
JUSTICE IN AGING
3660 Wilshire Boulevard, Suite 718
Los Angeles, CA 90010
Phone: (213) 375-3559
Fax: (213) 550-0501
REGAN BAILEY
(D.C. Bar No. 465677)
*rbailey@justiceinaging.org*
CAROL A. WONG
(D.C. Bar No. 1035086)
*cwong@justiceinaging.org*
JUSTICE IN AGING
1444 Eye Street NW Suite 1100
Washington, D.C. 20005
Phone: (202) 289-6976


ALICE BERS* (CT Bar No. 442203)
WEY-WEY KWOK* (NY Bar No. 4004974)
CENTER FOR MEDICARE ADVOCACY
P.O. Box 350
Willimantic, CT 06226
Phone: (860) 456-7790
Fax: (860) 456-2614
abers@medicareadvocacy.org
wkwok@medicareadvocacy.org


*Admitted *pro hac vice*

HARVEY L. REITER
(D.C. Bar No. 232942)
*harvey.reiter@stinson.com*
MICHAEL TUCCI
(SBN DC 430470)
*michael.tucci@stinson.com*
M. ROY GOLDBERG
(D.C. Bar No. 416953)
*roy.goldberg@stinson.com*
STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006
(202) 785-9100
ANTHONY J. JARBOE*
(MO Bar No. 68746)
*tony.jarboe@stinson.com*
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, Missouri 63105
Phone: (314) 863-0800
Fax: (314) 863-9388


*Attorneys for Plaintiffs*

21

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2021, a copy of the foregoing Memorandum of Points and Authorities in Support of Plaintiffs' Response to Defendants' Motion for Voluntary Remand, or, in the Alternative, a Stay of Proceedings was filed. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

DATE: September 17, 2021                                    /s/*Carol A. Wong*